UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE DUCKETT,<br><br>   Plaintiff,<br><br>  v.<br><br>P. GARCIA,<br><br>   Defendant. | Case No. 23-cv-04748 BLF (PR)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br><br>(Docket No. 24) |

  Plaintiff, a state inmate, filed the instant *pro se* civil rights complaint under 42 U.S.C. § 1983, against Correctional Officer P. Garcia-Cortes at Salinas Valley State Prison ("SVSP"). Dkt. No. 1. The Court found the complaint stated a cognizable Fourth Amendment claim based on an allegedly unreasonable body search and ordered the matter served on Defendant. Dkt. No. 13.

  Defendant Garcia-Cortes filed a motion for summary judgment on the grounds that Plaintiff cannot establish that Defendant violated her rights as a matter of law and Defendant is entitled to qualified immunity. Dkt. No. 24.[1] Plaintiff did not file an

---

[1] In support of his motion, Defendant submits his declaration with exhibits, Dkt. Nos. 24-1, 24-2, the declaration of Officer A. Gutierrez with an exhibit, Dkt. Nos. 24-3, 24-4, and the

opposition although provided an opportunity to do so. Dkt. No. 13 at3-4.

For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**.

## DISCUSSION

### I. Statement of Facts[2]

Plaintiff is biologically male but identifies as a transgender woman. Trenbeath Decl., Ex. A, Dkt. No. 24-6 at 10-11 (Duckett Depo. at 6:5-9, 32:9-17). Plaintiff is taking hormone shots and is seeking but has not yet undergone gender-affirming surgery. *Id.* at 12-13 (Duckett Depo. at 31:19-25, 33:2-34:10). Plaintiff carries a "transgender access card" which indicates the following: (1) gender identity is female, (2) preferred pronouns she/her/hers, (3) preference MS, and (4) search preference "Female." Dkt. No. 1 at 3, 4. The underlying incident for this action took place on December 24, 2021, at SVSP, which is a prison designed for men. Dkt. No. 24-6 at 4 (Duckett Depo. at 28:19-29:1, 31:3-12); Garcia Cortes Decl. ¶ 2.

That morning, Defendant Garcia-Cortes was on duty during second watch shift (6:00 a.m. to 2:00 p.m.) and assigned to Facility A, Building 5, as a floor officer. Garcia-Cortes Decl. ¶ 3. At approximately 7:47 a.m., while monitoring medication pass in Building 5, Defendant heard loud sounds of a physical scuffle coming from the TV area on the C-Section side of the dayroom. *Id.* Defendant Garcia-Cortes walked with his partner, Officer Gutierrez, towards C-Section and saw Plaintiff walking backwards with

---

declaration of Deputy Attorney General Jean M. Trenbeath with an exhibit, Dkt. Nos. 24-5, 24-6. The submitted exhibits include the following: (1) a copy of an incident report containing Defendant Garcia-Cortes' narrative of an incident that took place on December 24, 2021 (Ex. A), a copy of SVSP's Operational Procedure 19 for Search Procedures (Ex. B), and an extract from the CDCR's Operations Manual regarding unclothed body search of inmates, including transgender or intersex inmates, Dkt. No. 24-2; (2) a copy of an incident report containing Officer Gutierrez's narrative of an incident that took place on December 24, 2021 (Ex. A), Dkt. No. 24-4; and (3) excerpts from Plaintiff's deposition taken on July 16, 2024 (Ex. A), Dkt. No. 24-6 ("Duckett Dep.").

[2] The following facts are undisputed unless otherwise indicated.

2

her arms up with closed fists. *Id.* She stopped approximately eight feet in front of Defendant. *Id.* Defendant Garcia-Cortes and Officer Gutierrez gave verbal orders for all inmates to prone out; all inmates, except Plaintiff, complied with Defendant's verbal order. *Id.*; Gutierrez Decl. ¶ 2. Defendant Garcia-Cortes gave Plaintiff multiple verbal orders to prone out, but she did not comply; instead, she took an aggressive, bladed stance towards Defendant with her fists up. Garcia-Cortes ¶ 3; Gutierrez Decl. ¶ 2. Defendant Garcia-Cortes again gave Plaintiff orders to prone out, but she did not comply. Garcia-Cortes ¶ 3. As Plaintiff took a step towards him, Defendant Garcia-Cortes immediately unholstered and used his state-issued MK-9 oleoresin capsicum streamer (pepper spray) on Plaintiff from about six feet away, spraying her facial area. *Id.* Plaintiff then proned out on the ground, after which Defendant placed handcuffs on Plaintiff and performed a clothed body search for contraband. *Id.*

Sergeant A. Demnowicz instructed Defendant Garcia-Cortes and Officer Gutierrez to escort Plaintiff to the Facility A gymnasium for decontamination from the pepper spray and for a medical evaluation. Garcia-Cortes Decl. ¶ 4. Although an officer who has just been involved in an incident is typically not supposed to be part of the escort, there was a staff shortage at SVSP such that Sgt. Demnowicz authorized Defendant Garcia-Cortes and Officer Gutierrez to perform the escort. Garcia-Cortes ¶ 4; Gutierrez Decl. ¶ 3.

After Plaintiff, Defendant Garcia-Cortes, and Officer Gutierrez arrived at the Facility A gymnasium, they waited for another officer to arrive and unlock the door to the gymnasium. Garcia-Cortes Decl. ¶ 5. Once the door was unlocked, the three entered the gym and Defendant Garcia-Cortes placed Plaintiff inside a temporary holding cell. *Id.*; Gutierrez Decl. ¶ 4. After Plaintiff was secured inside the holding cell, Defendant Garcia-Cortes removed her handcuffs through the food/cuff port. Garcia-Cortes ¶ 6; Gutierrez Decl. ¶ 4. Defendant Garcia-Cortes then conducted an unclothed body search of Plaintiff which was required before a medical evaluation was conducted to ensure no

3

weapon or contraband is on the inmate's person. Garcia-Cortes Decl. ¶¶ 6-7; Gutierrez Decl. ¶ 5; Trenbeath Decl., Ex. A, Dkt. No. 24-6 at 15.

An unclothed body search involves the inmate removing their own clothing and handing the clothing to the officer through the food/cuff port of the temporary holding cell. Garcia-Cortes Decl. ¶ 8. The officer searches the clothing for contraband. *Id.* The officer also conducts a visual inspection of the inmate's body and instructs the inmate to squat and cough; the officer does not touch the inmate during the unclothed body search. *Id.* Officer Gutierrez stood off to the side of the holding cell, at about two feet away, while Defendant Garcia-Cortes conducted the unclothed body search of Plaintiff. Gutierrez Decl. ¶ 6. No one else was inside the Facility A gymnasium during the unclothed body search aside from Plaintiff, Defendant Garcia-Cortes, and Officer Gutierrez. *Id.* ¶ 11; Garcia-Cortes Decl. ¶ 17.

According to Plaintiff, she showed Defendant Garcia-Cortes her transgender access card but he disregarded it. Dkt. No. 1 at 3; Trenbeath Decl., Ex. A (Duckett Depo.), Dkt. No. 24-6 at 14-15. Plaintiff says that when she showed the card, Defendant Garcia-Cortes replied, "I don't give a fuck about that Duckett take off your fucking bra I am not playing with you, Do not let me have to tell you again." Dkt. No. 1 at 4; Trenbeath Decl., Ex. A (Duckett Depo.), Dkt. No. 24-6 at 14-15. Plaintiff states that she complied out of force and fear, and that Defendant viewed her "female chest bear [*sic*] naked." Dkt. No. 1 at 4. Another officer was with her in the gym, watching her in the holding cage. *Id.* Plaintiff claims Defendant acted deliberately, willfully, and unlawfully and in non-compliance with CDCR search policies and "SB132." *Id.* at 3, 6.

Defendant Garcia-Cortes was aware at the time that Plaintiff was transgender. Garcia-Cortes Decl. ¶ 9. According to Defendant and Officer Gutierrez, neither before or during the unclothed body search did Plaintiff: (1) inform them that she wanted to be searched by a female officer; (2) inform them that she had a female search preference approved by the CDCR; or (3) show them a CDCR transgender access card with female

4

search preference. *Id.* ¶¶ 10-12; Gutierrez Decl. ¶¶ 7-8. Defendant Garcia-Cortes also states that he followed SVSP's local operating procedure in effect at the time as it pertained to unclothed body searches of transgender inmates. Garcia Cortes Decl. ¶ 14.

"SB132" refers to Senate Bill 132, the Transgender Respect, Agency, and Dignity Act ("Act"), which is codified at California Penal Code §§ 2605 and 2606. *Beverly v. Orange Cty. Sheriff*, No. 820CV00797JGBSP, 2021 WL 5911666, at *9 (C.D. Cal. Sept. 21, 2021), *report and recommendation adopted*, No. 8:20-CV-797-JGP (SP), 2021 WL 5908845 (C.D. Cal. Dec. 13, 2021). The Act became effective on January 1, 2021. *Id.* Under SB 132, any individual incarcerated by CDCR who identifies as transgender, nonbinary, or intersex is to be searched "according to the search policy for their gender identity or according to the gender designation of the facility where they are housed, based on the individual's search preference. *See* Cal. Penal Code § 2606, subd. (2)(2).

Section 52050.16.5 of CDCR's Department Operations Manual provides that "[r]outine unclothed body searches shall not be completed by staff of the opposite biological sex." Garcia-Cortes Decl. ¶ 15, Ex. C (Dkt. No. 24-2). The staff member conducting the unclothed body search must visually inspect the inmate's body. *Id.*; Garcia-Cortes ¶ 8. Those individuals "going through Receiving and Release (R&R)" who self-identify as transgender or with a gender "that seems not to match their biological sex, the search will be conducted by staff of the same biological sex as the inmate to be searched." *Id.* ¶ 15, Ex. C. As of March 2021, procedures involving unclothed body searches of transgender inmates housed at SVSP required that the inmate "be searched in the same manner as all other inmates at the institution, with only male staff conducting the unclothed search." *Id.* ¶ 14, Ex. B. SVSP is a maximum-security prison that houses male inmates, a small minority of which identify as female. *Id.* ¶ 2.

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to

5

judgment as a matter of law." Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

  Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted.  *See Liberty Lobby*, 477 U.S. at 249-50.

  The burden then shifts to the nonmoving party to "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323.

  The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact.  *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

1    The evidence presented and the inferences to be drawn from the facts must be viewed in a
2    light most favorable to the nonmoving party.  *See id*. at 631.  The nonmoving party has
3    the burden of identifying with reasonable particularity the evidence that precludes
4    summary judgment.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  If the
5    nonmoving party fails to do so, the district court may properly grant summary judgment
6    in favor of the moving party.  *See id.*

### A.     Fourth Amendment - Unreasonable Search

The Fourth Amendment applies to the invasion of bodily privacy in prisons.  *Bull v. San Francisco*, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc); *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988).  Prisoners and pretrial detainees in institutional settings may be subjected to strip searches and body cavity searches if they are conducted in a reasonable manner.  *See Bell v. Wolfish*, 441 U.S. 520, 561 (1979).

To analyze a claim alleging a violation of the Fourth Amendment's privacy right, the court must apply the test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), and determine whether a particular invasion of bodily privacy was reasonably related to legitimate penological interests.  *See Bull*, 595 F.3d at 973; *Michenfelder*, 860 F.2d at 333-34.  The court also should apply the balancing test set forth in *Bell*, 441 U.S. at 559, and consider: (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the place in which it was conducted.  *See Bull*, 595 F.3d at 974-75 (applying *Turner* and *Bell*); *Thompson v. Souza*, 111 F.3d 694, 699-700 (9th Cir. 1997) (same); *Michenfelder*, 860 F.2d at 332-33 (same).  Put simply, the court should "consider the reasonableness of [the intrusion under *Bell*] to help [it] determine if [the intrusion] was reasonably related to legitimate penological interests [under *Turner*]."  *Thompson*, 111 F.3d at 700.  The prisoner bears the burden of showing that prison official intentionally used exaggerated or excessive means to enforce security in conducting a search.  *Id.* at 700.

A cross-gender strip search that involves touching the inmate's genitalia and

7

1  searching inside his anus is unreasonable as a matter of law in a non-emergency situation.
2  *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc)
3  ("*Byrd I*").  Although such a cross-gender strip search is unreasonable, that does not mean
4  that all cross-gender searches are unreasonable, or that prisoners of one gender may not be
5  guarded by guards of the other gender.  Thus, the holding in *Byrd I* is not inconsistent with
6  the earlier holding in *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985), that upheld a
7  system of assigning female officers within a correctional facility such that they
8  occasionally viewed male inmates in various states of undress and conducted routine pat-
9  downs of fully clothed inmates.  *See Byrd I*, 629 F.3d at 1142.

Defendant asserts that the undisputed facts demonstrate the unclothed body search of Plaintiff was reasonable under the Fourth Amendment when considering the factors under *Bell*, 441 U.S. at 559.  Dkt. No. 24 at 13.  Defendant first contends that he did not touch Plaintiff's body during the search which was only visual, and that this was the only unclothed body search Defendant conducted on Plaintiff.  *Id.*  Defendant also contends that Plaintiff's conduct in the dayroom was what precipitated the unclothed body search, which was necessary to ensure the safety and security of prison staff and inmates through interception of any contraband, including deadly weapons, that the inmate may be concealing on his or her person.  *Id.* at 13-14.  Lastly, Defendant asserts that the unclothed body search occurred when Plaintiff was inside a holding cell, where no other inmates were present.  Defendant contends that under these circumstances, Plaintiff cannot establish that Defendant Garcia-Cortes violated her rights as a matter of law.  *Id.* at 14.  Plaintiff has filed no opposition to dispute Defendant's argument.

Viewing the evidence in the light most favorable to Plaintiff and evaluating the undisputed facts under *Bell*'s balancing test, the Court finds Defendant has established the absence of a genuine issue of material fact with regard to this Fourth Amendment claim.  Even assuming as true that Plaintiff showed her transgender access card to Defendant Garcia-Cortes and he disregarded it in the manner alleged, the undisputed

8

facts regarding the unclothed body search that followed show that it was conducted in a reasonable manner. First, the scope of the intrusion was visual and at no time did Defendant Garcia-Cortes touch Plaintiff's person: it is undisputed that Plaintiff remained inside the holding cell during the search while Defendant Garcia-Cortes remained outside. Second, it is undisputed that the search was conducted according to the departmental policy on unclothed body searches in effect at the time, which included the requirement that unclothed body searches not be completed by staff of the opposite biological sex. *See supra* at 5. It is also undisputed that although Plaintiff identified as female and was wearing a bra, she had not yet undergone gender-affirming surgery and therefore was biologically male at the time of the unclothed body search. *Id.* at 2. Furthermore, only two officers were present during the search, with Officer Gutierrez off to the side to give Plaintiff privacy. Thirdly, it is undisputed that the search was justified due to Plaintiff's aggressive conduct and Defendant Garcia-Cortes's use of force that precipitated the unclothed body search which was then required to prevent distribution of any contraband, including deadly weapons, within the prison. *Id.* at 3. Lastly, the unclothed body search was conducted inside a holding cell in the Facility A gymnasium, where no other inmates were present. *Id.* at 4. Balancing these factors under *Bell*, the Court finds that the unclothed body search conducted by Defendant Garcia-Cortes was done in a reasonable manner and that it was reasonably related to the legitimate penological interest of maintaining the safety and security of the prison. This situation was not the type of cross-gender strip search that involved touching of an inmate's genitalia in a non-emergency situation which would be unreasonable as a matter of law under *Byrd I*, 629 F.3d at 1142. Rather, it involved no touching and was triggered by Plaintiff's non-compliant and aggressive behavior. In response, Plaintiff has failed to carry her burden of showing that Defendant intentionally used exaggerated or excessive means to enforce security in conducting this unclothed body search. *See Thompson*, 111 F.3d at 700. Based on the foregoing, the Court finds that the undisputed facts show that

9

no constitutional violation under the Fourth Amendment occurred.

Even if it could be said that the search was unreasonable and violated the Fourth Amendment, the Court finds Defendant is entitled to qualified immunity as discussed below. *See infra* at 11-15.

### B.  Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Once a defendant has raised qualified immunity as a defense to a claim, a plaintiff must show "(1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." *Sato v. County of San Bernardino*, No. 22-55853, 2023 WL 7211397, at *3 (9th Cir. Nov. 2, 2023) (quoting *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). Plaintiff bears the burden of showing that the right at issue was clearly established. *Id.* (internal citation omitted). "There need not be a case directly on point to defeat an officer's qualified immunity defense, but existing case law must have put 'every reasonable official' on notice that their conduct was unconstitutional." *Martinez v. High*, 91 F.4th 1022, 1031 (9th Cir. 2024). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in defendant's shoes would have understood that he was violating it." *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (finding officer entitled to qualified immunity against an excessive force claim because there was no clearly established law by which any competent officer would have

10

known that shooting plaintiff, who was armed with a knife, to protect a bystander would violate the Fourth Amendment).

The court has discretion to decide which qualified immunity prong to address first: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right; and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier*, 533 U.S. at 194). If the court "answer[s] either question in the negative, the officer is entitled to qualified immunity." *See Smith v. Agdeppa*, 56 F.4th 1193, 1200 (9th Cir. 2022).

"[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant. *See Tolan v. Cotton*, 572 U.S 650, 656 (2014). For example, regarding the first prong, the threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier*, 533 U.S. at 201. "[R]egardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Community House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). "[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or

11

constitutional question beyond debate.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (citations omitted). In the absence of binding precedent, the court may look to all available decisional law, including the law of other circuits and district courts. *See Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1223 (9th Cir. 2015) (only in absence of decisional authority by Supreme Court or Ninth Circuit are other sources of decisional law, such as out-of-circuit cases, considered).

### 1. <u>Analysis</u>

Defendant asserts that no reasonable male correctional officer could have known that an unclothed body search of Plaintiff could have violated her Fourth Amendment rights. Dkt. No. 24 at 15. Defendant asserts that routine unclothed body searches have not only been consistently upheld in court, but they are also a fundamental tool used by prisons, including CDCR, to maintain the security and safety of their prisons. *Id.*, citing *Bell*, 441 U.S. at 558; *Thompson*, 111 F.3d at 700; *Michenfelder*, 860 F.2d at 332; *Grummet*, 779 F.2d at 494 n.1. Defendant also points out that no Ninth Circuit court has found that any inmate has an affirmative right to have a search performed by an individual who shares the same gender identity as the inmate being searched. *Id.*, citing *Somers v. Thurman*, 109 F.3d 614, 620-22 (9th Cir. 1997) (Ninth Circuit finds it "highly questionable" whether prison inmates have a right to be free from routine unclothed body searches by officials of the opposite sex, or from viewing of their unclothed bodies by officials of the opposite sex).

Defendant concedes that there have been some recent cases in this circuit that have analyzed unclothed searches of transgender inmates within the context of the Fourth and Eighth Amendments. Dkt. No. 24 at 15. Defendant asserts, however, that these cases were decided after the search at issue in this case. *Id.* Defendant asserts that there is an absence of existing precedent that places the constitutionality of the unclothed searches of transgender inmates "beyond debate," such that Defendant Garcia-Cortes could not have known that his unclothed body search on December 24, 2021, violated Plaintiff's rights.

12

1   *Id.* at 16.

2       To overcome Defendant's assertion of qualified immunity, Plaintiff must identify a case where an officer acting under similar circumstances as Defendant Garcia-Cortes was held to have violated the Fourth Amendment. *See Kisela*, 584 U.S. at 105. Plaintiff has filed no opposition attempting to do so.

    Under the first prong, the Court has determined above that Plaintiff's rights under the Fourth Amendment were not violated by the unclothed body search. *See supra* at 10. But even if it was, Plaintiff would have to establish that the right at issue was clearly established to satisfy the second prong to defeat Defendant's qualified immunity argument. Having filed no opposition to Defendant, Plaintiff has failed to carry this burden.

    Furthermore, the Court's review of the caselaw on this issue shows that the constitutionality of Plaintiff's unclothed body search was not "clearly established" on December 24, 2021, such that Defendant Garcia-Cortes could have reasonably believed that his conduct was unlawful. The two cases identified by Defendant are *Plunkett v. Parham, et al.*, No. 2:19-cv-1450 KJM AC P, 2024 WL 3446520 at *7 (E.D. Cal. July 17, 2024), and *Erbacher v. Robles*, 2023 WL 6201535, at *6, No. 1:23-cv-01194 JLT BAM P (E.D. Cal. Sept. 22, 2023). In *Plunkett*, the court determined that it was "unable to identify any authority clearly establishing the right of transgender inmates to be searched by an officer of the gender with which they identify"; summary judgment was granted in favor of the male correctional officer who conducted a visual unclothed body search of a transgender inmate. *Plunkett*, 2024 WL 3446520 at *9. In *Erbacher*, the court considered the unclothed search of a transgender female by male officers as a cross-gender search but found that the inmate failed to state a claim for relief under either the Fourth or Eighth Amendment. *Erbacher*, 2023 WL 7343245, at *6. The district court refused to adopt the court's findings and recommendations to dismiss the claim for failure to state a claim, and instead found the inmate stated a cognizable Fourth

13

Amendment claim. *Id.* at *1.

The Court notes that neither of these cases are from the Supreme Court or Ninth Circuit and therefore not binding. *See Community House, Inc.*, 623 F.3d at 967. Nor has the Supreme Court or the Ninth Circuit ruled that a district court decision creates clearly established law. Furthermore, because these cases were decided after the case at bar, it cannot be said that they put Defendant Garcia-Cortes on notice that his actions on December 24, 2021, were unreasonable. Moreover, because the *Plunkett* and *Erbacher* courts came to different conclusions regarding the existence of a Fourth Amendment claim, it cannot be said that there exists a "clearly established" right that places the constitutionality of unclothed searches of transgender inmates in similar circumstances "beyond debate." *See Carroll*, 574 U.S. at 16. Rather, the *Plunkett* court, in reviewing the state of the law in 2017 (the date of the incident), found that the law was not clearly established regarding this type of Fourth Amendment right. The Court has also found no Ninth Circuit or Supreme Court precedent since 2017 that would have put Officer Garcia-Cortes on notice of a clearly established right in December 2021.

Accordingly, Defendant Garcia-Cortes's mistake, if any, in believing that it was lawful to conduct an unclothed body search of Plaintiff, as a transgender who was still biologically male, was reasonable under the circumstances. *See Saucier*, 533 U.S. at 205 (if officer's mistake as to what the law requires is reasonable, he is entitled to qualified immunity). In other words, it cannot be said that *any* reasonable official in Defendant's shoes would have understood that his conduct under these circumstances violated the Fourth Amendment. *See Kisela*, 584 U.S. at 105. Defendant is entitled to qualified immunity on this claim.

## CONCLUSION

For the reasons stated above, Defendant P. Garcia-Cortes's motion for summary judgment is **GRANTED**. Dkt. No. 24. The Fourth Amendment claim against Defendant

14

is **DISMISSED** with prejudice.

This order terminates Docket No. 24.

**IT IS SO ORDERED.**

Dated:  __June 17, 2025_____                    _____
                                                                                    BETH LABSON FREEMAN
                                                                                    United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.23\04748Duckett_grant.msj